UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NAKISHA WEST,

    Plaintiff,

Case No. 1:24-cv-12829

HONORABLE STEPHEN J. MURPHY, III

v.

ROHM AND HAAS CHEMICAL LLC,

    Defendant.

_____/

**OPINION AND ORDER**
**GRANTING MOTION FOR SUMMARY JUDGMENT [17]**

Plaintiff Nakisha West sued Defendant Rohm and Haas Chemical LLC for discrimination in violation of state and federal law. ECF No. 15. Before discovery,[1] Defendant moved for summary judgment based on the "Termination General Release" that Plaintiff signed near the conclusion of her employment. ECF No. 17. Because there are no genuine disputes of material fact and Defendant is entitled to judgment as a matter of law, the Court will grant the motion. *See* Fed. R. Civ. P. 56(a).

---

[1] Although summary judgment is usually proper only after discovery, the record is sufficiently complete to enable the Court to rule. *Plott v. Gen. Motors Corp., Packard Elec. Div.*, 71 F.3d 1190, 1195 (6th Cir. 1995). And West did not argue that the factual record was too sparse for summary judgment. *See generally* ECF No. 19; *see also* Fed. R. Civ. P. 56(d) (outlining procedure for when nonmovant lacks facts needed to oppose a motion for summary judgment).

1

## BACKGROUND

West was an employee of Rohm and Hass, which is a subsidiary of Dow Chemical. On March 23, 2023,[2] West learned that her position had been terminated and was encouraged to apply for other positions. ECF No. 23-1, PageID.219; ECF No. 25-1, PageID.276. On that day, Gary Hrywnak (an HR representative with Dow Chemical), sent an email to "Nakisha West." ECF No. 23-1, PageID.223. The email included a letter that noted "You will receive your . . . Termination General Release (the 'Release') with the final calculation of severance benefits prior to your separation date. You will have a review period to consider whether or not to accept the terms of that Release," and the email invited West to ask questions. *Id.* at PageID.223–224.

Then, on June 1, 2023, Dow Human Resources carbon copied Hrywnak on an email to "Nakisha West." ECF No. 24-1, PageID.257. The email noted that its attachments included a "Termination General Release" and stated that "this legal document cannot be signed and returned until your actual date of separation or after. This must be signed and returned (if you agree to the terms and conditions) in order to facilitate the severance payments and other transitional benefits offered to you." *Id.* The email also encouraged West to "[p]lease take some time to digest the attached information and connect with Human Resources for questions you may have around the information, timing, action items, etc." *Id.* But West never actually received the email or the attached paperwork. ECF No. 25-1, PageID.276 ("I did not get any

---

[2] West agreed that she was informed of her impending separation in the spring but could not recall the exact date. ECF No. 25-1, PageID.276.

2

paperwork from Dow for the layoff until they asked me to sign the document at the end of June 2023.").

On June 30, 2023, West was informed that there were no other jobs available for her and that she was being "let go officially." *Id.* She was presented with the Termination General Release to sign, for the first time. Rohm and Haas told West that she should sign it, and West felt pressure to sign it that day "to ensure that it was completed before any further employment actions were taken against" her. West signed the document on June 30.[3] At the time, she did not fully understand all of the terms of the document, and Rohm and Haas did not explain them to her. *Id.*

The parties did not contest the terms of the Release. They did not contest that the Release would cover all of West's claims here. They did not contest that the terms of the Release expressly gave West forty-five days to consider the release before signing and seven days to rescind her signature. They did not contest that the agreement advised West to consult with an attorney before signing the document. And they did not contest that, at some point, West signed the release. They contested only the leadup to, timing, and circumstances surrounding the signing of the Release.

The Court held oral argument on the motion on May 14, 2025.

---

[3] The date on the signed release is odd. It appears that someone wrote "July 1, 2023," and then another wrote "July 13, 2023" over it in different ink. ECF No. 17-2, PageID.140. West declared that she signed it on her last day of employment, which was June 30. ECF No. 25-1, PageID.276. The Court takes that statement as true.

3

## LEGAL STANDARD

The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party must point to specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party may not simply rest on the pleadings but must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When it considers a summary judgment motion, the Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

## DISCUSSION

Even taking the evidence in the light most favorable to West, the Court concludes that she released her claims against Defendant when she signed the

release. *Cf. Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 502 (6th Cir. 2003).[4] The factual disputes about when West first got the documents and when West signed the release are just not material to the question of whether the release is valid. The parties did not contest many issues: the terms of the release, West's background, the amount of consideration, that the release gave West 45 days to consider it, that the release gave West 7 days to rescind her acceptance, and others. Because West presented no genuine dispute of material fact on the enforceability of the release, and Defendant is entitled to judgment as a matter of law, the Court will grant the motion.

Federal common law controls the interpretation and enforceability of a release of a federal cause of action, *Nicklin v. Henderson*, 352 F.3d 1077, 1080 (6th Cir. 2003), and Michigan law governs the interpretation and enforceability of the release of a Michigan cause of action. *Soltis v. J.C. Penney Corp.*, 635 F. App'x 245, 248 (6th Cir. 2015). Generally, Michigan law regarding the enforceability of releases tracks federal law but is generally less searching and less firmly articulated. *McClellan v. Midwest Machining, Inc.*, No. 1:16-cv-1308, 2017 WL 4512577 (W.D. Mich. Apr. 18, 2017); *see*

---

[4] In rare circumstances, courts will discount evidence presented by the non-moving party on a motion for summary judgment. None of those circumstances, however, are present here. For one, the sham affidavit doctrine does not apply because West did not submit an affidavit that contradicted her "earlier sworn testimony." *See France v. Lucas*, 836 F.3d 612, 622 (6th Cir. 2016). In addition, the Court cannot conclude that West's version of events is "blatantly contradicted by the record." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Some forms of electronic evidence might prove that an employee received a release on a certain date. But Defendants did not present electronic evidence about the receipt that shows West's email address, *see, e.g.*, ECF No. 24, PageID.253, and the Court has no information about whether West had access to the email account or was reasonably likely to check it. Nor is the irregular signature on the release sufficient to prove when West signed the release. For those reasons, the Court cannot simply discount West's evidence.

*Rowady v. K Mart Corp.*, 170 Mich. App. 54, 60 (1988). Regardless, because the parties identified no daylight between the outcomes here under either body of relevant decisional law, and the Court agrees with that conclusion, the Court will analyze them together. Further, the parties did not contest that, if the release is enforceable, its unambiguous text would release West's claims against Defendant. *See Taggart v. United States*, 880 F.2d 867, 870 (6th Cir. 1989).

The parties instead focused on whether the release is enforceable. Releases of discrimination claims are enforceable if "knowingly and voluntarily executed." *Gascho v. Scheurer Hosp.*, 400 F. App'x 978, 981 (6th Cir. 2010). A mere statement from a contracting party that she was unaware of a term is insufficient to render a contract unknowing, because "[o]ne who accepts a written contract is conclusively presumed to know its contents and to assent to them." *See Thompson v. Lynch*, 788 F.3d 638, 647 (6th Cir. 2015); *Xu v. Gay*, 257 Mich. App. 263, 272–73 (2003) ("A release is knowingly made even if it is not labeled a 'release,' or the releasor fails to read its terms, or thought the terms were different, absent fraud or intentional misrepresentation designed to induce the releasor to sign the release through a strategy of trickery."). Instead, courts in the Sixth Circuit consider the following factors to determine whether a release was entered "knowingly" and "voluntarily": (1) the clarity of the release; (2) Plaintiff's experience, background, and education; (3) the consideration for the release; (4) the amount of time Plaintiff had to consider the release, including whether she had the opportunity to consult with a lawyer; and (5) the totality of the circumstances. *Nicklin*, 352 F.3d at 1080.

### A.  *The Release's Clarity*

West did not argue or aver that the Release was unclear. She identified no ambiguity or opacity in the text of the release. And the second-to-last page of the release spells out the significance of an employee's signature. West's signature indicated that she: "carefully read and reviewed this Release;" "fully understands all of its terms and conditions;" "fully understands that the Release is legally binding and that by signing it, Employee is giving up certain rights;" "has been provided up to forty-five (45) days to consider this Release;" "will have (7) days to revoke his or her acceptance of this Release after signing it;" and "has been advised, and has had the opportunity, to consult with an attorney prior to signing the release." ECF No. 17-2, PageID.139. The Release is unambiguously clear that it is a release of rights. *Soltis*, 635 F. App'x at 250 (concluding that similar language was clear); *Gascho*, 400 F. App'x at 878 (same). There is no genuine dispute of material fact regarding the clarity of the release. And its undisputed clarity favors finding the release was entered into "knowingly and voluntarily."

### B.  *Plaintiff's Experience, Background, and Education*

The record is bare regarding West's background, experience, and education. And she presented no evidence to suggest that she was unable to comprehend the language used in the Release. *Soltis*, 635 F. App'x at 250 (finding relevant that plaintiff had "not alerted us to anything in her background that suggests she could not understand the basic terms of a contract"); *id.* at 251 (concluding that a law degree was not required to understand similarly complex language); *Gascho*, 400 F. App'x at

7

878 (same). There is no genuine dispute of material fact regarding her background. Because West pointed to nothing that suggested she was unable to comprehend the language in the release, this factor favors finding the release was entered "knowingly and voluntarily."

### C. Consideration for the Release

West made no argument and did not identify any genuine dispute of material fact related to the adequacy of the consideration for the release, which included $12,169. ECF No. 17-2, PageID.135. West did not argue, for example, "that this consideration was unfair or otherwise a disproportionate exchange of value and indeed nowhere challenges the fairness of the benefits the" Defendant offered her. *See Gascho*, 400 F. App'x at 982. There is no genuine dispute of material fact regarding the adequacy of the consideration. Again, this factor favors finding West signed the release "knowingly and voluntarily."

### D. Timing and Access to Counsel

This factor generally focuses on the time afforded to West, not the time that she actually used. *See Innis v. Bankers Tr. Co. of S.D.*, No. 16-cv-00650, 2019 WL 2714509 (S.D. Iowa Apr. 30, 2019); *Salami v. Jubilee Ass'n of Md.*, No. 20-3532, 2021 WL 2784632, at *5 (D. Md. July 2, 2021). Even if West received the Release for the first time on her last day, the Release expressly gave her forty-five days to consider it. ECF No. 17-2, PageID.139. That timeframe is sufficient as a matter of law. *Gascho*, 400 F. App'x at 982.

But when there is a genuine dispute of fact whether the purported timeframe was illusory—for example, because the employer instructed the employee to sign the document early or affirmatively prevented the employee from taking the document with them to consider—the times stated in a release may be insufficient. *Kendrick v. KMart Corp.*, No. 99-73367, 2000 WL 246582, at *3 (E.D. Mich. Feb. 25, 2000) (addressing whether time was truly afforded as required by statute); *Kinney v. Unifirst Corp.*, No. 06-cv-376, 2007 WL 2903910, at *5 (E.D. Tenn. Oct. 3, 2007); *Hardin v. Morningside of Jackson, L.L.C.*, 425 F. Supp. 2d 898, 907 (W.D. Tenn. 2006) ("The evidence does not, for example, suggest that Morningside would not have allowed Hardin to take a copy home or to slow the process of signing in order to inform herself before waiving her rights."). That occasional exception is inapplicable here.

West identified only one reason why she did not take advantage of the 45-day period: the pressure that she felt to sign the document quickly to avoid further negative employment actions. *See* ECF No. 25-1, PageID.276. But West did not aver that Defendant took any overtly pressuring actions. Although Defendant expressed a preference that West sign the document, West did not declare, and the Court cannot reasonably infer, that she was expressly told by anyone that she had to sign the Release on June 30 or threatened by them to do so. *Salami*, 2021 WL 2784632, at *5 (rejecting an argument that an employee felt he had to sign an agreement by the end of the day when the agreement gave a twenty-one day consideration period and he did not claim that he was told to sign it before he left the premises).

And when pressed at oral argument as to what possible future employment actions West could face on her last day of employment, West identified only a possible reduction in the amount of money she would get or rescission of the severance offer. But, as now-Chief Judge Sutton explained in *Gascho*, the type of pressure intrinsic to bargaining does not defeat a release of claims:

> All bargaining, whether to buy a house, to take a job or to settle a dispute, comes with implicit economic and psychological pressures— that if the one party does not take the offer, it may go to someone else in the case of the perfect house or the ideal job or it may not happen at all in the case of the money and other benefits accompanying a settlement offer. The better the offer, indeed, the greater the implied fiscal threat, creating the possibility that a claim of duress grows stronger the more generous the offer.
>
> Yet that is not how it works. As the Restatement reminds us, "[a]n ordinary offer to make a contract commonly involves an implied threat by one party, the offeror, not to make the contract unless his terms are accepted by the other party, the offeree." Restatement (Second) of Contracts § 176 cmt. a (2010).

400 F. App'x at 983.

Even contemplating other forms of pressure, West's internal and subjective feeling of urgency is insufficient. For example, in *Solomon v. CARite Corp. LLC*, 837 F. App'x 355 (6th Cir. 2020), the Sixth Circuit analyzed whether an arbitration agreement was knowingly and voluntarily entered into using the same factors as here. There, the plaintiff was "handed the document in the middle of her workday" and told "to sign the document or her employment would be terminated." *Id.* at 362. The employee's supervisor "stood behind her while she read through the agreement, and she spent only five to ten minutes reviewing the arbitration agreement, without

10

the assistance of counsel." *Id.* at 362–63. Despite that plaintiff suffering undoubtedly more pressure, the Sixth Circuit reversed the denial of summary judgment.

Here, the Release also unambiguously gave West seven days to rescind the agreement. ECF No. 17-2, PageID.139. In other words, she still had seven days to consider the release once she had locked down the offer through acceptance and would no longer have feared rescission by Defendant. That gave her more than enough time to reconsider her decision to sign or to consult with counsel. *See Sako v. Ohio Dep't of Admin. Servs.*, 278 F. App'x 514, 519 (6th Cir. 2008) (concluding that the plaintiff had enough time to review the contract when given "only a few minutes"); *Bowie v. Clear Your Debt, LLC*, No. 11-cv-1266, 2012 WL 892607, at *4 (N.D. Ohio Mar. 14, 2012) (concluding that "even if [the plaintiff] felt rushed during the review with [the defendant], she had the opportunity to review the contract after signing, without the influence of the [defendant], and to rescind without penalty or obligation within three days after having signed the agreement"), *aff'd*, 523 F. App'x 315 (6th Cir. 2013). And West did not declare that she was unaware of the rescission window. Instead, her declaration suggested that she thought she had no reason to use it. ECF No. 25-1, PageID.276.

There is no genuine dispute of fact regarding the time given to West to waive her rights that is material to the enforceability of the Release. This factor also favors finding that West entered the release "knowingly and voluntarily."

### E.  Totality of the Circumstances

The totality-of-circumstances prong "allows claimants to invoke other considerations, including the risk that the waiver was a product of duress and thus involuntary." *See Gascho*, 400 F. App'x at 982. First, as discussed above, West did not declare that there was any overt "wrongful act or threat" that overcame her free will. *Id*. West presented no evidence of a circumstance that would meet the exacting threshold of duress. *Cf. Bell v. Gen. Motors*, No. 11-cv-10905, 2012 WL 2680909, at *3 (E.D. Mich. July 6, 2012) ("'Not knowing what else to do' does not meet the high threshold of acting against free will.").

Instead, West declared and argued that the Release was unenforceable because Defendant failed to explain the terms to her. First, the Court has already concluded that the Release was clear and unambiguous. Second, West identified no legal obligation of Defendant to explain the contract to her, likely because one does not exist. *See Hank v. Great Lakes Constr. Co.*, 790 F. App'x 690, 699–700 (6th Cir. 2019) ("Hank argues that Great Lakes never informed him that he could take additional time or consult an attorney. But Great Lakes didn't need to."); *NBT Assocs., Inc. v. Allegiance Ins. Agency CCI, Inc.*, No. 2:10-cv-14108, 2011 WL 6122775, at *5 (E.D. Mich. Dec. 9, 2011) ("Given that the terms of the Release Agreement are clear and unambiguous, this alleged failure to inform falls short of a misrepresentation of the contract or other fraudulent or overreaching conduct sufficient to impu[gn] the validity of the release."); 28 *Williston on Contracts* § 71:10 (4th ed. 2025) ("[O]ne cannot avoid the contract's obligations by asserting that it was not read, explained or

12

understood."). Instead, "it was her obligation to seek counsel before she signed if she felt she did not understand the agreement." *Jamil v. Mercedes-Benz Fin. Servs. USA, LLC*, No. 24-1481, 2025 WL 398546, at *3 (6th Cir. Feb. 4, 2025) (citation modified). And even if, as discussed above, West felt a time crunch to sign the Release on June 30, she could have sought better understanding during her period to rescind. The fifth and final factor likewise favors finding West knowingly and voluntarily entered the release.

For all the foregoing reasons, the Court will grant summary judgment for Defendant.

## CONCLUSION

The evidence cited by West in response to Defendant's motion neither created a genuine dispute of material fact nor proved that Defendant is not entitled to judgment as a matter of law. West did not show an inability to understand the Release. She did not show improper action from Defendant that would render her time to consider and rescind the Release illusory. And she did not challenge the amount of consideration nor the existence of a rescission period. As a result, the Court concludes that West knowingly and voluntarily entered the Release as a matter of both federal and Michigan law. So, the Release is enforceable and bars West's claims. Accordingly, the Court will grant Defendant's motion for summary judgment.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendant's Motion for Summary Judgment Based on Plaintiff's Release of All Claims [17] is **GRANTED**.

13

**IT IS FURTHER ORDERED** that the case is **DISMISSED WITH PREJUDICE.**

This is a final order that closes the case.

**SO ORDERED.**

s/ Stephen J. Murphy, III  
STEPHEN J. MURPHY, III  
United States District Judge

Dated: June 30, 2025